## PEOPLE v. JOHN W. WILLIAMS, Inc.

(Supreme Court, Appellate Division, First Department.   April 7, 1916.)

1. CRIMINAL LAW ⬅1158(1)—FINDINGS—SUFFICIENCY.
    The justices of the Court of Special Sessions being constituted triers of the facts, their determination should not be lightly overturned by the Appellate Division.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3070, 3071, 3074;  Dec. Dig. ⬅1158(1).]

2. FOOD ⬅21—DISEASED MEAT.
    In a prosecution for violating Sanitary Code, § 42, of the department of health of the city of New York, declaring that no meat, not being then healthy, or the meat of any animal that died by disease or accident, shall be kept, offered for sale, or sold as food, evidence *held* insufficient to show that defendant, who was in possession of the carcass of a diseased hog delivered the night previous, was keeping it with intent to sell.
    [Ed. Note.—For other cases, see Food, Cent. Dig. § 22;  Dec. Dig. ⬅21.]

    Clarke, P. J., and Davis, J., dissenting.

Appeal from Court of Special Sessions, New York County.

John W. Williams, Incorporated, was convicted of violating the Sanitary Code, § 42, of the Department of Health of the City of New York, and appeals.   Order or judgment reversed, and defendant discharged.

Argued before CLARKE, P. J., and LAUGHLIN, SCOTT, PAGE, and DAVIS, JJ.

Sol Tekulsky, of New York City, for appellant.
E. Crosby Kindleberger, of New York City, for respondent.

SCOTT, J.   [1, 2]  The section of the Sanitary Code which defendant has been convicted of violating provides as follows:

"Sec. 42.   No meat, vegetables or milk, not being then healthy, fresh, sound, wholesome or safe for human food or the meat of any animal that died by disease or accident, shall be brought into the city of New York or held, kept, offered for sale or sold as such food anywhere in said city;  nor shall any such food, substance or articles be kept or stored therein.   *   *   * "

The prosecution proved, and the fact was not disputed, that on September 2, 1914, the defendant had in its possession the carcass of a badly diseased hog.   This constituted prima facie proof of defendant's guilt, and the sole question presented for the consideration of the court was whether the presumption of guilt deducible from such proof had been met and overthrown by the testimony offered in behalf of defendant.   It was proved beyond contradiction that the hog had been delivered at defendant's premises about midnight of September 1st (when the only person in charge of the premises was a watchman), and that defendant had not offered the hog for sale or made any effort to conceal it.   In fact, it was testified to that very early in the morning of September 2d, one of defendant's employés, deeming the appearance of the hog to be suspicious, had made some

effort to find one of the inspectors of the department of health to make an examination. There was also evidence, undisputed and not inherently incredible, that a federal inspector through whose hands the hog had passed before delivery to defendant had sent an order or message, which was delivered, directing defendant to hold the hog until it could be properly examined.

We recognize that the justices of the Court of Special Sessions are constituted the triers of the facts in a case like the present, and that their determination on the facts should not lightly be overturned. Consequently, if the case presented upon the evidence a fairly disputable question as to the guilty intent of the defendant, a necessary ingredient of the crime charged, we should not be disposed to disturb defendant's conviction. We can find no such question. Only by rejecting all of the evidence tendered by defendant, and convicting certain apparently reputable witnesses of willful and causeless perjury, and substituting suspicion for proof, can the conviction be upheld. The accusation against defendant involves charging it with the willful commission of a crime, and requires something more than a mere suspicion to warrant a conviction.

The order or judgment appealed from must be reversed, and the defendant discharged. Settle order on notice.

LAUGHLIN and PAGE, JJ., concur.

DAVIS, J. (dissenting). The defendant was convicted in the Special Sessions of a violation of section 42 of the Sanitary Code in keeping and offering for sale diseased meat. On September 2, 1914, the food inspector of the department of health visited the premises of the defendant at 11:30 a. m. and found one tuberculous hog hanging on a hook in the cooler among other edible meats. When the inspector went into defendant's cooler, he was followed by Widmayer, one of defendant's employés. The inspector, having found the hog, apparently without any aid from the salesman, spoke of its peculiar condition, whereupon the salesman said, "Its all right, Inspector." Then, again, the bookkeeper, Belvin, on cross-examination, was asked if he was present when the inspector was there. He said, "Yes." And when asked why some one did not tell the inspector about the diseased carcass, he replied, "It was not for us to tell him." Yet these two men knew perfectly well from information they had received that the hog was diseased. Upon this evidence, with the other evidence in the case, the Special Sessions Court was justified in finding as a matter of fact that there was an attempt to conceal the bad condition of the carcass from the inspector, with a view of selling it, and that the defendant's claim that the hog was being held for inspection and not offered for sale was altogether unsubstantial and false in fact. We have here simply a case where the defendant, knowing of the diseased condition of a carcass, mingles it with other carcasses in his cooler, and conceals the facts from the inspector, and when caught tries to avoid the damaging effect of these circumstances by a denial of an intention to sell the diseased meat.

The Special Sessions justices have passed upon the credibility of the witnesses, in view of their demeanor and interest in the cause, and I see no reason for disturbing their judgment.

Therefore I feel constrained to dissent, and advise an affirmance of the judgment.

CLARKE, P. J., concurs.